UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                    MASTER FILE NO. 12-md-02311

_____

In Re: Motor Generators                 HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Action                       2:13-cv-01502
End-Payor Action                        2:13-cv-01503

_____/

**OPINION AND ORDER DENYING MOTOR GENERATORS DEFENDANTS' JOINT MOTION TO DISMISS THE END-PAYORS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND THE AUTOMOBILE DEALERS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS**

Before the Court is Motor Generators Defendants' Motion to Dismiss the Auto Dealer Plaintiffs' and the End-Payors Plaintiffs' Consolidated Amended Class Action Complaints (Case No. 13-1502, Doc. No. 33; Case No. 13-1503, Doc. No. 27). Defendants include DENSO Corporation and DENSO International America, Inc., (together "DENSO Defendants"), Hitachi Automotive Systems, Ltd. ("HIAMS") and Hitachi Automotive Systems Americas, Inc. ("HIAMS-US") (together "Hitachi Defendants").

At the January 28, 2015, oral argument, Hitachi Defendants represented that they had reached a settlement in this case, and have withdrawn from the motion. In addition, the parties informed the Court that they had resolved their dispute as to the standing of the End-Payor Plaintiffs and the Automobile Dealership Plaintiffs. The parties waived oral argument on the remaining issues.

To the extent that those arguments were raised in the Collective Motion to Dismiss in the Anti-Vibration Rubber Parts, Radiators, Switches, Motor Generators, HID Ballasts, Electronic Power Steering Assemblies, Fan Motors, Power Window Motors, and Windshield Washer Systems, the Court declines to address them here. Consequently, the sole argument addressed below is the plausibility of the length of the alleged conspiracy. For the reasons that follow, the Court rejects the argument, and the motion is **DENIED**.

**I. RELEVANT FACTS**

Automobile Dealership Plaintiffs ("ADPs"), and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Indirect Purchaser Plaintiffs" or "IPPs") filed separate consolidated class action complaints (see Case No. 13-1502, Doc. No. 3 (redacted); Case No. 13-1503, Doc. No. 10 (redacted)), advancing federal and state law claims based upon their allegations that Defendants "manufactured, marketed, and/or sold" Motor Generators in the United States to numerous Original Equipment Manufacturers ("OEMs"), and engaged in a conspiracy to "unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States relative to Motor Generators from January 2000 through the present. (See Doc.

No. 3 at ¶ 2, Doc. No. 10 at ¶ 2). It is undisputed that Motor Generators are used in electric and hybrid electric vehicles to recharge the battery or to draw electricity from the battery to power the motor.

IPPs describe the process by which OEMs purchase Motor Generators. (Doc. No. 3 at ¶ 103; Doc. No. 10 at ¶ 89). IPPs allege that the structure and other characteristics of the Motor Generators market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market. (Doc. No. 3 at ¶ 19; Doc. No. 10 at ¶ 92). Specifically, the Motor Generators market has high barriers to entry, including long-standing customer relationships, advanced engineering and technological prowess, costly and lengthy start-up costs and the ability to integrate the Motor Generators design with existing vehicle models. (Doc. No. 3 at ¶¶ 110-114; Doc. No. 10 at ¶¶ 93-96). The market also is characterized by inelasticity of demand (Doc. No. 3 at ¶¶ 115-117; Doc. No. 10 at ¶¶ 97-99). IPPs assert that inelastic demand in the Motor Generators market allowed the cartel to profit by increasing prices above competitive levels during the Class Period. (Doc. No. 3 at ¶ 116; Doc. No. 10 at ¶ 98).

IPPs also include allegations about the government investigations into the industry. Specifically, on November 22, 2012, the Japan Fair Trade Commission announced cease-and-desist orders against the companies that had violated Japan's antitrust laws. According to IPPs, although DENSO Corporation violated the laws it did not receive a cease-and-desist order. (Doc. No. 3 at ¶ 122; Doc. No. 10 at ¶ 104). In addition, on September 26, 2013, the Department of Justice announced that Defendant Hitachi Automotive Systems, Ltd. agreed to pay a $195 million criminal fine and to plead

guilty to a one-count criminal information charging it with participating in a conspiracy to rig bids for, and to fix the prices of Motor Generators and other automotive parts sold to OEMs, including Ford Motor Company, General Motors Company, Honda Motor Company, Nissan Motor Company Ltd, Toyota Motor Company, Chrysler Group, LLC, and Fuji Heavy industries, Ltd ("Subaru"), and certain of their subsidiaries, affiliates, and suppliers, in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1. (Doc. No. 3 at ¶¶ 127-132; Doc. No.10 at ¶ 107).

In addition to the allegations regarding Defendants that pleaded guilty, in their sealed complaints, IPPs describe a specific transaction involving collusion in responding to Requests for Quotations ("RFQs"), and the who, what, where, and when associated with the RFQs.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that

is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a section 1 Sherman Act claim.  It held that the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

## III.  ANALYSIS

In their motion, DENSO Defendants argue that IPPs fail to allege a plausible conspiracy lasting fourteen years inasmuch as IPPs reference only one specific allegation of a coordinated set of bids relevant to one OEM.  Moreover, the bids were made just a few years before the end of the conspiracy regarding a product that would be manufactured years later.  IPPs rely on this allegation to advance a claim based on all sales of all eclectic and hybrid electric vehicles by all OEMs since January 2000, and

the Court should find that IPPs have failed to allege facts to support the existence of a conspiracy during the time period alleged. (See (Doc. No. 3 at ¶¶ 8, 125; Doc. No. 10 at ¶¶ 8, 106).

The Court disagrees. IPPs' complaints allege an overarching conspiracy to rig bids and fix the prices of Motor Generators. The complaints detail international government investigations that resulted in the guilty pleas of other defendants for their part in the price-fixing and bid-rigging of automotive component parts, including Motor Generators, as well as the market conditions that facilitated the conspiracy. Here, HIAMS pleaded guilty to an antitrust conspiracy from at least as early as January 2000. DENSO Corporation pleaded guilty to antitrust violations involving other component parts. These two Defendants are linked to a specific example of bid rigging and price-fixing. Defendants have no authority to support their argument that dismissal of a civil complaint is required when the complaint expanded beyond the conduct to which the defendants in an antitrust criminal case have pleaded guilty, and this Court has declined to dismiss complaints falling within 12-2311 on this ground. The existence of the guilty pleas demonstrate that the Motor Generators conspiracy existed, and the allegation that Defendants conspired from as early as 2000 is not implausible, particularly, when HIAMS' guilty plea is considered. The factual allegations advanced in the IPPs' complaints create "a reasonable expectation that discovery will reveal evidence of illegal agreement" beyond the extent admitted by HIAMS. Twombly, 550 U.S. at 556.

## IV. CONCLUSION

For the reasons stated above, DENSO Defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

Date:   February 26, 2015                                                  s/Marianne O. Battani
                                                                                               MARIANNE O. BATTANI
                                                                                               United States District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 26, 2015.

                                                                                               s/ Kay Doaks
                                                                                               Case Manager