**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 |
| | : |
| | : |
| In Re: Wire Harness | : 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : 2:12-cv-00203 |
| In Re: Fuel Senders | : 2:12-cv-00303 |
| In Re: Heater Control Panels | : 2:12-cv-00403 |
| In Re: Alternators | : 2:13-cv-00703 |
| In Re: Windshield Wiper Systems | : 2:13-cv-00903 |
| In Re: Radiators | : 2:13-cv-01003 |
| In Re: Starters | : 2:13-cv-01103 |
| In Re: Ignition Coils | : 2:13-cv-01403 |
| In Re: Motor Generators | : 2:13-cv-01503 |
| In Re: HID Ballasts | : 2:13-cv-01703 |
| In Re: Inverters | : 2:13-cv-01803 |
| In Re: Air Flow Meters | : 2:13-cv-02003 |
| In Re: Fan Motors | : 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : 2:13-cv-02203 |
| In Re: Power Window Motors | : 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : 2:13-cv-02403 |
| | : |
| In Re: Valve Timing Control Devices | : 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : 2:13-cv-02803 |
| In Re: Spark Plugs | : 2:15-cv-03003 |
| In Re: Ceramic Substrates | : 2:16-cv-11804 |
| | : |
| THIS DOCUMENT RELATES TO | : |
| | : |
| End-Payor Actions | : |

**END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED SETTLEMENT WITH DENSO DEFENDANTS AND**
**PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this motion may be heard before the Hon. Marianne O. Battani, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between EPPs and DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO Automotive Deutschland GmbH, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., and ASMO Manufacturing, Inc. in the amount of $193,800,000.00, and provisional certification of the proposed Settlement Classes in the above-captioned actions.

This motion is based on this Notice of Motion and Motion, the Memorandum of Law in support thereof, all filings in this litigation, and such other arguments as may be presented to the Court.

Date:  July 14, 2016                    Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Hsalzman@RobinsKaplan.com
Bpersky@RobinsKaplan.com
Wreiss@RobinsKaplan.com

*/s/ Steven N. Williams*
Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road

2

Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

*/s/ E. Powell Miller*
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed
End-Payor Plaintiff Classes*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 |
| | : |
| | : |
| In Re: Wire Harness | : 2:12-cv-00103 |
| In Re: Instrument Panel Clusters | : 2:12-cv-00203 |
| In Re: Fuel Senders | : 2:12-cv-00303 |
| In Re: Heater Control Panels | : 2:12-cv-00403 |
| In Re: Alternators | : 2:13-cv-00703 |
| In Re: Windshield Wiper Systems | : 2:13-cv-00903 |
| In Re: Radiators | : 2:13-cv-01003 |
| In Re: Starters | : 2:13-cv-01103 |
| In Re: Ignition Coils | : 2:13-cv-01403 |
| In Re: Motor Generators | : 2:13-cv-01503 |
| In Re: HID Ballasts | : 2:13-cv-01703 |
| In Re: Inverters | : 2:13-cv-01803 |
| In Re: Air Flow Meters | : 2:13-cv-02003 |
| In Re: Fan Motors | : 2:13-cv-02103 |
| In Re: Fuel Injection Systems | : 2:13-cv-02203 |
| In Re: Power Window Motors | : 2:13-cv-02303 |
| In Re: Automatic Transmission Fluid Warmers | : 2:13-cv-02403 |
| | : |
| In Re: Valve Timing Control Devices | : 2:13-cv-02503 |
| In Re: Electronic Throttle Bodies | : 2:13-cv-02603 |
| In Re: Air Conditioning Systems | : 2:13-cv-02703 |
| In Re: Windshield Washer Systems | : 2:13-cv-02803 |
| In Re: Spark Plugs | : 2:15-cv-03003 |
| In Re: Ceramic Substrates | : 2:16-cv-11804 |
| | : |
| THIS DOCUMENT RELATES TO | : |
| | |
| End-Payor Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
WITH DENSO DEFENDANTS AND PROVISIONAL CERTIFICATION
OF SETTLEMENT CLASSES**

## STATEMENT OF ISSUES PRESENTED

1. Whether End-Payor Plaintiffs' ("EPPs") settlement agreement with Defendants DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, DENSO Korea Automotive Corporation, DENSO Automotive Deutschland GmbH, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc., and ASMO Manufacturing, Inc. (collectively, the "DENSO Defendants"), entered into on July 14, 2016 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved;

2. Whether the Court should provisionally certify the Settlement Classes under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3);

3. Whether the Court should stay the proceedings as to the EPPs against the DENSO Defendants in accordance with the terms of the Settlement Agreement; and

4. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel on behalf of the Settlement Classes.[1]

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

i

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528 (E.D. Mich. 2013)

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D.

Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 U.S. Dist. LEXIS 9687 (S.D.

Tex. June 4, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D.

Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, No. 09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D.

Mich. Oct. 18, 2010)

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT ......... 11

ARGUMENT ..................................................................................................... 23

I.   Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval .................................................... 23

    A.   The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ......................................................... 26

    B.   The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel With the Assistance of a Mediator. 30

II.  The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23. ................................................................................................. 32

    A.   The Proposed Settlement Classes Meet the Requirements of Rule 23(a) ............. 33

        i.   The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court ............................................ 34

        ii.   End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions. ................................ 35

        iii.   End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes. ...................... 36

        iv.   Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes ....................................................... 37

    B.   The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3). ........ 39

        i.   Common Questions of Law and Fact Predominate. .................................... 39

        ii.   A Class Action is the Superior Method to Adjudicate These Claims. .......... 41

    C.   The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(2). ........ 43

III.  Notice to the Settlement Class Members. .................................................... 43

CONCLUSION .................................................................................................. 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) ................................................................24

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................39, 40, 42

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)............................................................33, 40

*Avio, Inc. v. Alfoccino, Inc.*,
  311 F.R.D. 434 (E.D. Mich. 2015) .............................................35, 39

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ..............................................................40

*Bobbitt v. Acad. of Reporting*,
  No. 07-cv-10742, 2009 U.S. Dist. LEXIS 62365 (E.D. Mich. Jul. 21, 2009) .......................24

*Bowers v. Windstream Ky. East, LLC*,
  No. 09-cv-440, 2013 U.S. Dist. LEXIS 157242 (W.D. Ky. Nov. 1, 2013) ...........................32

*Cason-Merenda v. VHS of Mich., Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013), *vacated*, No. 13-0113, 2014 U.S. App.
  LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, No. 06-15601, 2014
  U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) ............................................37

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
  803 F.2d 878 (6th Cir. 1986) ..............................................................25

*Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)................................................................40

*Date v. Sony Elecs., Inc.*,
  No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013) .........................35

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..............................................................43

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ..............................................................34

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
  (E.D. Mich. Dec. 12, 2013) ........................................................................ *passim*

*Hyland v. Homeservices of Am., Inc.*,
  No. 05-cv-612-R, 2008 U.S. Dist. LEXIS 90892 (W.D. Ky. Nov. 6, 2008) ........................34

*In re Aluminum Phosphide Antitrust Litig.*,
  160 F.R.D. 609 (D. Kan. 1995) ...................................................................................35

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ................................................................................34, 36

*In re Ampicillin Antitrust Litig.*,
  82 F.R.D. 652 (D.D.C. 1979) .......................................................................................30

*In re Blood Reagents Antitrust Litig.*,
  No. 09-2081, 2015 U.S. Dist. LEXIS 141909 (E.D. Pa. Oct. 19, 2015) ................................40

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ..................................................................... *passim*

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995) ...............................................................................27

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) .......................................................................................38

*In re Corrugated Container Antitrust Litig.*,
  MDL No. 310, 1981 U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981) ...........................29, 30

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ...............................................................................32

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. 02-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ................................35

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
  481 F.3d 1119 (9th Cir. 2007) .....................................................................................28

*In re Foundry Resins Antitrust Litig.*,
  242 F.R.D. 393 (S.D. Ohio 2007) ...................................................................... *passim*

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................................................29, 30

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255
  (E.D. Mich. Feb. 22, 2011) .................................................................... *passim*

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427
  (E.D. Mich. Dec. 13, 2011)................................................................26

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235 (E.D. Mich. Sept. 2, 2010)...................32

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) ...............25, 30

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ....................................................30

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................28

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ...............................................................39, 40, 41

*In re Southeastern Milk Antitrust Litig.*,
  Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223
  (E.D. Tenn. Sept. 7, 2010) ..................................................................33

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
  No. 01-cv-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19, 2001) .........................25

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004)............................................................42

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ............................................................30

*In re Urethane Antitrust Litig.*,
  251 F.R.D. 629 (D. Kan. 2008)............................................................41

*In re Vitamins Antitrust Litig.*,
  209 F.R.D. 251 (D.D.C. 2002)............................................................40

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)............................................................28

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ..........................................33, 35, 39, 41

*Int'l Union, UAW v. Ford Motor Co.*,
  Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471
  (E.D. Mich. July 13, 2006) ................................................................................24, 36

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ...............................................................................23

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008).........................................................................32

*Marcus v. Dep't of Revenue*,
  206 F.R.D. 509 (D. Kan. 2002)......................................................................................38

*Miller v. Univ. of Cincinnati*,
  241 F.R.D. 285 (S.D. Ohio 2006) ..................................................................................34

*Powers v. Hamilton Cnty. Public Defender Comm.*,
  501 F.3d 595 (6th Cir. 2007) .........................................................................................40

*Rankin v. Rots*,
  No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) .......................25

*Reed v. Advocate Health Care*,
  268 F.R.D. 573 (N.D. Ill. 2009)......................................................................................41

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .....................................................................................28

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
  No. 09-cv-1608, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio June 15, 2010) .........................42

*Sheick v. Auto Component Carrier LCC*,
  No. 09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)......................31

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) .........................................................................................36

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  259 F.R.D. 262 (E.D. Ky. 2009).................................................................................31, 43

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)...................................................................................................33

**Other Authorities**

4 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (4th ed.
  2005) ...................................................................................................................25, 31, 35

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)............................................24, 32

**Statutes**

Antitrust Criminal Penalty Enforcement Reform Act, Pub. L. No. 108-237, §
213(a)-(b), 118 Stat. 661 (June 22, 2004), *as amended by* Pub. L. No. 111-
190, 124 Stat. 1275 (June 9, 2010) ...........................................................................10

Fed. R. Civ. P. 16 Advisory Committee's Note (1983).................................................24

Fed. R. Civ. P. 23 ................................................................................... *passim*

viii

EPPs, on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with the DENSO Defendants and provisional certification of the proposed Settlement Classes in the above-captioned actions.

## PRELIMINARY STATEMENT

Automotive parts, including Automotive Wire Harness Systems, Instrument Panel Clusters, Fuel Senders, Heater Control Panels, Alternators, Windshield Wiper Systems, Radiators Starters, Ignition Coils, Motor Generators, HID Ballasts, Inverters, Air Flow Meters, Fan Motors, Fuel Injection Systems, Power Window Motors, Automatic Transmission Fluid Warmers, Oil Coolers, Valve Timing Control Devices, Electronic Throttle Bodies, Air Conditioning Systems, Windshield Washer Systems, Spark Plugs, Oxygen Sensors and Air Fuel Ratio Sensors, and Ceramic Substrates (collectively, the "Alleged Parts"), are among the parts at issue in these coordinated multi-district proceedings, *In re Automotive Parts Antitrust Litigation* ("Auto Parts Litigation"), MDL No. 2311.  For the purpose of the proposed settlement, the automotive parts generally and the various automotive parts that are the subject of the above-captioned actions are defined[2] as follows:

"**Automotive Parts**" means any part or part assembly as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, Case No. 2:13-cv-703 (Dec. 18, 2015), ECF No. 57-1, but without regard to whether or not it was sold directly to an OEM.

---

[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as in the settlement agreement between EPPs and the DENSO Defendants, dated July 14, 12016.

"**Automotive Wire Harness Systems**" has the meaning of that term as used in Paragraph 3 of the Fourth Consolidated Class Action Complaint, Case No. 2:12-cv-00103 (Oct. 17, 2014), ECF No. 234.

The Automotive Wire Harness Systems Defendants are:  DENSO Corporation ("DENSO"), DENSO International America, Inc. ("DIAM"); Fujikura Ltd., Fujikura Automotive America LLC; Furukawa Electric Co., Ltd., American Furukawa, Inc.; Lear Corporation; Kyungshin-Lear Sales and Engineering, LLC; Leoni Wiring Systems, Inc., Leonische Holding, Inc.; Sumitomo Electric Industries, Ltd., Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc., K&S Wiring Systems, Inc., Sumitomo Wiring Systems (U.S.A.) Inc. (collectively, "Sumitomo"); Yazaki Corporation, Yazaki North America, Inc. (together, "Yazaki"); Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (together, "Tokai Rika"); GS Electech, Inc., G.S. Wiring Systems Inc., G.S.W. Manufacturing Inc.; Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., Mitsubishi Electric Automotive America, Inc. (collectively, "MELCO"), Chiyoda Manufacturing Corporation, and Chiyoda USA Corporation.

"**Instrument Panel Clusters**" has the meaning of that term as used in Paragraph 2 of the Second Consolidated Amended Class Action Complaint, Case No. 2:12-cv-00203 (Aug. 27, 2014), ECF No. 94.

The Instrument Panel Clusters Defendants are:  Yazaki; DENSO, DIAM; Nippon Seiki Co., Ltd., N.S. International, Ltd., New Sabina Industries, Inc.; Continental Automotive Electronics LLC, Continental Automotive Korea Ltd., Continental Automotive Systems, Inc.

"**Fuel Senders**" has the meaning of that term as used in Paragraph 2 of the Second Consolidated Amended Class Action Complaint, Case No. 2:12-cv-00303 (Aug. 27, 2014), ECF No. 86.

The Fuel Senders Defendants are:  Yazaki; DENSO and DIAM.

"**Heater Control Panels**" has the meaning of that term as used in Paragraph 2 of the Second Consolidated Amended Class Action Complaint, Case No. 2:12-cv-00403 (Aug. 25, 2014), ECF No. 103.

The Heater Control Panels Defendants are:  DENSO, DIAM; Sumitomo; Tokai Rika; Alps Electric Co., Ltd., Alps Electric (North America), Inc. and Alps Automotive Inc.

"**Alternators**" has the meaning of the term as used in Paragraph 2 of the Consolidated Amended Class Action Complaint[3], Case No. 2:13-cv-00703 (July 16, 2015), ECF No. 41.

The Alternators Defendants are:  DENSO, DIAM; MELCO; Hitachi, Ltd., Hitachi Automotive Systems, Ltd. (together, "Hitachi"); Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., Robert Bosch LLC (together, "Bosch"); Mitsuba Corporation and American Mitsuba Corporation (together, "Mitsuba").

"**Windshield Wiper Systems**" has the meaning of that term as used in Paragraph 2 of the Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-00903 (Feb. 10, 2015), ECF No. 60.

---

[3] End-Payor Plaintiffs operative complaints in the Alternators and Starters Actions are identical to one another.  End-Payor Plaintiffs intend to amend these complaints so as to, among other things, limit one to Alternators and the other to Starters.

3

The Windshield Wiper Systems Defendants are: DENSO, DIAM, DENSO International Korea Corporation ("DIKR"), DENSO Korea Automotive Corporation, ASMO Co., Ltd., ASMO North America, LLC, ASMO Greenville of North Carolina, Inc.; Mitsuba; and Bosch.

"**Radiators**" has the meaning of that term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01003 (June 13, 2014), ECF No. 28.

The Radiators Defendants are:   CalsonicKansei Corporation, CalsonicKansei North America, Inc. (together, "Calsonic"); DENSO, DIAM; T.RAD Co., Ltd., T.RAD North America, Inc. (together, "T.RAD"); and Mitsuba.

"**Starters**" has the meaning of the term as used in Paragraphs 3 of the Consolidated Amended Class Action Complaint[4], Case No. 2:13-cv-01103 (July 16, 2015), ECF No. 51.

The Starters Defendants are:  DENSO, DIAM; MELCO; Hitachi; Bosch; and Mitsuba.

"**Ignition Coils**" has the meaning of that term as used in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01403 (Aug. 11, 2015), ECF No. 40;

The Ignition Coils Defendants are:  DENSO, DIAM; Diamond Electric Mfg. Co., Ltd., Diamond Electric Mfg. Corporation; Hitachi; MELCO; Toyo Denso Co. Ltd., and Weastec Inc.

"**Motor Generators**" has the meaning of that term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01503 (June 13, 2014), ECF No. 11.

The Motor Generators Defendants are:  DENSO, DIAM; and Hitachi.

"**HID Ballasts**" has the meaning of that term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01703 (June 13, 2014), ECF No. 10.

---

[4] *See* n.3, *supra.*

4

The HID Ballasts Defendants are:  DENSO, DIAM; Panasonic Corporation, Panasonic Corporation of North America (together, "Panasonic"); Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., II Stanley Co., Inc.; Koito Manufacturing Co., Ltd., North American Lighting, Inc.; and MELCO.

"**Inverters**" has the meaning of that term as used in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-01803 (Dec. 19, 2014), ECF No. 18.

The Inverters Defendants are:  DENSO, DIAM; and Hitachi.

"**Air Flow Meters**" has the meaning of that term as used in Paragraph 3 of the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:13-cv-14198 (Oct. 2, 2013), ECF No. 1.

The Air Flow Meters Defendants are:  DENSO, DIAM; and Hitachi.[5]

"**Fan Motors**" have the meaning of the term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02003 (June 12, 2014), ECF No. 13.

The Fan Motors Defendant is:  Presently, just Mitsuba[6].

"**Fuel Injection Systems**" has the meaning of that term as used in Paragraph 2 of the Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02203 (Jan. 16, 2015), ECF No. 28.

---

[5] Because End-Payor Plaintiffs' operative complaint in the Fuel Injection Systems Action defines Fuel Injection Systems to include Air Flow Meters, End-Payor Plaintiffs intend to consolidate the Air Flow Meters and Fuel Injection Systems Actions.  For the sole purpose of implementing the Settlement Agreement, and subject to a reservation of all rights, the DENSO Defendants will not oppose such consolidation.

[6] End-Payor Plaintiffs intend to amend the Fan Motors complaint to name one or more of the DENSO Defendants as a Defendant in the Fan Motors Action.

The Fuel Injection Systems Defendants are:  Aisan Industry Co., Ltd., Franklin Precision Industry, Inc., Aisan Corporation of America, Hyundam Industrial Co., Ltd.; DENSO, DIAM, DIKR; Hitachi; Keihin Corporation, Keihin North America, Inc.; Mikuni Corporation, Mikuni American Corporation (together, "Mikuni"); Mitsuba; MELCO; and Bosch.

"**Power Window Motors**" has the meaning of that term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02303 (June 17, 2014), ECF No. 18.

The Power Window Motors Defendants are:  DENSO, DIAM; and Mitsuba.

"**Automatic Transmission Fluid Warmers**" and "**Oil Coolers**" have the meaning of those terms as used in Paragraphs 2 and 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02403 (Aug. 26, 2015), ECF No. 17.

The Automatic Transmission Fluid Warmers and Oil Coolers Defendants are:  DENSO, DIAM; T.RAD; and Calsonic.

"**Valve Timing Control Devices**" has the meaning of that term as used in Paragraph 2 of the Second Corrected Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02503 (Feb. 18, 2015), ECF No. 53.

The Valve Timing Control Devices Defendants are:  Aisin Seiki Co., Ltd., Aisin Automotive Casting, LLC; DENSO, DIAM, DIKR; Hitachi; MELCO; and Mikuni.

"**Electronic Throttle Bodies**" has the meaning of that term as used in Paragraph 3 of the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:13-cv-14229 (Oct. 3, 2013), ECF No. 1.

The Electronic Throttle Bodies Defendant is: Hitachi.[7]

"**Air Conditioning Systems**" has the meaning of that term as used in Paragraph 3 of the Consolidated Class Action Complaint, Case No. 2:13-cv-02703 (Sept. 4, 2015), ECF No. 31.

The Air Conditioning Systems Defendants are: Valeo Japan Co., Ltd., Valeo Inc., Valeo Electrical Systems, Inc., Valeo Climate Control Corp.; Mitsubishi Heavy Industries, Ltd., Mitsubishi Heavy Industries America, Inc., Mitsubishi Heavy Industries Climate Control, Inc.; DENSO, DIAM; Sanden Automotive Components Corporation, Sanden Automotive Climate Systems Corporation, Sanden International (U.S.A.) Inc.; Showa Denko K.K., Showa Aluminum Corporation of America; Calsonic; Panasonic; MAHLE Behr GmbH & Co. KG and MAHLE Behr USA Inc.

"**Windshield Washer Systems**" has the meaning of that term as used in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-02803 (June 12, 2014), ECF No. 8.

The Windshield Washer Defendants are: DENSO, ASMO Co., Ltd., DIAM, ASMO North America, LLC, ASMO Manufacturing, Inc.; and Mitsuba.

"**Spark Plugs**," "**Oxygen Sensors**," and "**Air Fuel Ratio Sensors**" have the meaning of those terms as used in Paragraphs 2 through 4 of the Class Action Complaint, Case No. 2:15-cv-11868 (May 22, 2015), ECF No. 2.

The Spark Plugs, Oxygen Sensors and Air Fuel Ratio Sensors Defendants are: DENSO, DIAM, DENSO Automotive Deutschland GmbH; NGK Spark Plug Co. Ltd., NGK Spark Plugs (U.S.A.), Inc.; Robert Bosch GmbH and Robert Bosch LLC.

_____

[7] Because End-Payor Plaintiffs' operative complaint in the Fuel Injection Systems Action defines Fuel Injection Systems to include Electronic Throttle Bodies, End-Payor Plaintiffs intend to consolidate the Electronic Throttle Bodies and Fuel Injection Systems Actions.

"**Ceramic Substrates**" has the meaning of that term as used in Paragraph 2 of the Class Action Complaint, Case No. 2:16-cv-11804 (May 20, 2016), ECF No. 2.

The Ceramic Substrates Defendants are:  DENSO Corporation, DIAM; NGK Insulators Ltd., NGK Automotive Ceramics USA, Inc.; Corning International Kabushiki Kaisha and Corning Incorporated.

These actions arise from conspiracies by and among the automotive industry's largest manufacturers, marketers, and sellers of automotive parts to fix prices, rig bids, and allocate the market and customers in the United States for the sale of such products.

EPPs filed class action complaints involving the Alleged Parts against the above-referenced Defendants between January 31, 2012 and May 20, 2016.  The Complaints assert claims for relief under the Sherman Act, 15 U.S.C. § 1, and various State antitrust, unjust enrichment, and consumer protection laws.  On December 18, 2015, EPPs filed a motion for leave to file a Proposed Consolidated Amended Complaint, in which the EPPs alleged a broad conspiracy as to "Automotive Parts," as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint.  *See, e.g.*, *Alternators*, 2:13-cv-00703 (Dec. 18, 2015), ECF No. 57-1.  On April 13, 2016, the Court denied EPPs' Motion to Consolidate and Amend Complaints and to proceed with the Proposed Consolidated Amended Complaint.  The Court's decision is subject to appeal.

EPPs' Complaints involving the Alleged Parts were coordinated as part of the Auto Parts Litigation.  The Court also appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Counsel for the End-Payor Plaintiffs in the Master Docket for MDL No. 2311.  *See* Case Management Order No. 3, Master File No. 2:12-md-2311, Case No. 2:12-cv-00100 (Aug. 7, 2012, ECF No. 271).  From the inception of these cases, Interim Co-Lead Class

8

Counsel have represented the interests of the classes of EPPs, including overseeing and directing the prosecution and settlement of the claims brought against the DENSO Defendants. This proposed settlement is a result of those efforts.

EPPs and the classes they represent are consumers and businesses who (i) purchased or leased a new Vehicle (defined below) in the United States not for resale containing one or more of the Alleged Parts manufactured or sold by DENSO, its co-defendant(s) or conspirator(s) or (ii) indirectly purchased one or more of the Alleged Parts manufactured or sold by DENSO, its co-defendant(s) or conspirator(s) as replacement parts.

EPPs allege that Defendants agreed to and did unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of the Alleged Parts, and then sold those products at supracompetitive prices to automobile manufacturers in the United States and elsewhere. *See, e.g.*, EPPs' Corrected Consolidated Amended Complaint in *In re Fuel Injection Systems* ¶¶ 1, 121.

The United States Department of Justice ("DOJ") has been investigating collusion by automotive parts manufacturers since at least February 2010, and the Federal Bureau of Investigation ("FBI") has participated in raids and executed search warrants carried out in some of Defendants' offices. As a result of the DOJ investigation, DENSO Corporation (1) agreed to plead guilty and pay a $78 million criminal fine for conspiring to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of (a) certain electronic control units ("ECUs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1, and (b) heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere from at least as

9

early as January 2000 until at least February 2010, in violation of the Sherman Act, 15 U.S.C. §

1, and (2) agreed to cooperate with the DOJ in its investigation into alleged antitrust violations as

to the manufacture and sale of ECUs and HCPs, and any litigation or other proceedings arising

or resulting from such investigation to which the United States is a party. *See* Plea Agreement at

¶ 4, 11, *United States v. DENSO Corp.*, Case No. 2:12-cr-20063-GCS-PJK (E.D. Mich. Mar. 5,

2012) (ECF No. 9).

The settlement between the EPPs and the DENSO Defendants is meaningful and

substantial and will result in a payment of $193,800,000 for the benefit of the EPP Classes, a

very significant achievement in this litigation.  The monetary component of the settlement is

particularly valuable in light of the fact that had the case proceeded to trial, DENSO would have

argued that it was subject to limited liability because, as the leniency applicant in many cases, it

would not have been subject to joint and several liability and treble damages in those cases under

the Antitrust Criminal Penalty Enforcement Reform Act ("ACPERA").  Pub. L. No. 108-237, §

213(a)-(b), 118 Stat. 661, 666-69 (June 22, 2004), *as amended by* Pub. L. No. 111-190, 124 Stat.

1275 (June 9, 2010).  Standing alone, the monetary recovery from the DENSO Defendants is

remarkable, but the settlement is also valuable to the EPPs in that it requires the DENSO

Defendants to:  (1) agree to an injunction prohibiting them for a period of two years beginning

on the date of entry of the final order and judgment, from engaging in any price-fixing, bid-

rigging, or market allocation as to any Automotive Part in violation of Section 1 of the Sherman

Act; and (2) provide comprehensive cooperation in the form of, *inter alia*, interviews with and

depositions of witnesses, and the production of certain documents (including transactional data),

related to the claims asserted in these cases.  The ability to obtain such assistance without

protracted and expensive discovery is extremely valuable to the EPPs.  The DENSO Defendants'

10

cooperation agreement will greatly enhance the EPPs' ability to prosecute their claims against the remaining non-settling Defendants.

Additionally, the DENSO Defendants' sales will remain in the case for purposes of computing the treble damages claim against the non-settling Defendants in accordance with governing law and shall be part of any joint and several liability claims against other current or future defendants. *See* Settlement Agreement ¶ 62. The EPPs and the members of the proposed Settlement Classes will retain their ability to recover from the remaining Defendants the entire amount of damages caused by the alleged conspiracies, even those attributable to the DENSO Defendants, less only the amount paid by the DENSO Defendants in settlement.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth herein, that the settlement with the DENSO Defendants is in the best interest of the proposed Settlement Classes and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1.  Preliminarily approving the settlement;

2.  Provisionally certifying the proposed Settlement Classes;

3.  Staying the proceedings against the DENSO Defendants in accordance with the terms of the Settlement Agreement; and

4.  Appointing Interim Co-Lead Class counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with the DENSO Defendants arises from extensive arm's length and good faith negotiations in addition to a two-day in-person mediation with a highly experienced mediator from JAMS, followed by continuing negotiations between the parties with the assistance of the mediator. In connection with the mediation, EPPs' counsel participated in

intensive fact-gathering sessions and informational meetings, as well as extensive negotiations that took place over several months through telephone calls, in-person meetings, and other communications.

**Settlement Classes**: The Settlement Agreement defines the Settlement Classes in the various actions as follows:

(a)     "Automotive Wire Harness Systems Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Automotive Wire Harness Systems as a component part, or indirectly purchased one or more Automotive Wire Harness Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Automotive Wire Harness Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Wire Harness Systems directly or for resale.

(b)     "Instrument Panel Clusters Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Instrument Panel Clusters as a component part, or indirectly purchased one or more Instrument Panel Clusters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Instrument Panel Clusters Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Instrument Panel Clusters directly or for resale.

(c)     "Fuel Senders Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included

12

one or more Fuel Senders as a component part, or indirectly purchased one or more Fuel Senders as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.   Excluded from the Fuel Senders Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fuel Senders directly or for resale.

(d)   "Heater Control Panels Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Heater Control Panels as a component part, or indirectly purchased one or more Heater Control Panels as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.   Excluded from the Heater Control Panels Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Heater Control Panels directly or for resale.

(e)   "Alternators Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Alternators as a component part, or indirectly purchased one or more Alternators as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Alternators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Alternators directly or for resale.[8]

(f)   "Windshield Wiper Systems Settlement Class" is defined as:

---

[8] *See* n.3, *supra*.

13

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Windshield Wiper Systems as a component part, or indirectly purchased one or more Windshield Wiper Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Windshield Wiper Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Windshield Wiper Systems directly or for resale.

(g)     "Radiators Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Radiators as a component part, or indirectly purchased one or more Radiators as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Radiators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Radiators directly or for resale.

(h)     "Starters Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Starters as a component part, or indirectly purchased one or more Starters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Starters Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Starters directly or for resale.[9]

---

[9] *See* n.3, *supra*.

14

(i)       "Ignition Coils Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Ignition Coils as a component part, or indirectly purchased one or more Ignition Coils as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.   Excluded from the Ignition Coils Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Ignition Coils directly or for resale.

(j)       "Motor Generators Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Motor Generators as a component part, or indirectly purchased one or more Motor Generators as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Motor Generators Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Motor Generators directly or for resale.

(k)       "HID Ballasts Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more HID Ballasts as a component part, or indirectly purchased one or more HID Ballasts as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.   Excluded from the HID Ballasts Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased HID Ballasts directly or for resale.

15

(l)     "Inverters Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Inverters as a component part, or indirectly purchased one or more Inverters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Inverters Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Inverters directly or for resale.

(m)     "Fan Motors Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Fan Motors as a component part, or indirectly purchased one or more Fan Motors as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Fan Motors Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Fan Motors directly or for resale.[10]

(n)     "Fuel Injection Systems Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Fuel Injection Systems as a component part, or indirectly purchased one or more Fuel Injection Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Fuel Injection Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies

---

[10] *See* n. 6, *supra*.

16

and instrumentalities, and persons who purchased Fuel Injection Systems directly or for resale.[11]

(o)      "Power Window Motors Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Power Window Motors as a component part, or indirectly purchased one or more Power Window Motors as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Power Window Motors Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Power Window Motors directly or for resale.

(p)      "Automatic Transmission Fluid Warmers and Oil Coolers Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Automatic Transmission Fluid Warmers or Oil Coolers as a component part, or indirectly purchased one or more Automatic Transmission Fluid Warmers or Oil Coolers as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Automatic Transmission Fluid Warmers and Oil Coolers Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automatic Transmission Fluid Warmers or Oil Coolers directly or for resale.

(q)      "Valve Timing Control Devices Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included

---

[11] Because the Fuel Injection Systems Settlement Class includes end-payor purchasers of Air Flow Meters and Electronic Throttle Bodies, the Agreement does not provide for separate settlement classes for end-payor purchasers of those products.

17

one or more Valve Timing Control Devices as a component part, or indirectly purchased one or more Valve Timing Control Devices as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Valve Timing Control Devices Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Valve Timing Control Devices directly or for resale.

(r)     "Air Conditioning Systems Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Air Conditioning Systems as a component part, or indirectly purchased one or more Air Conditioning Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Air Conditioning Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Air Conditioning Systems directly or for resale.

(s)     "Windshield Washer Systems Settlement Class" is defined as:

All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Windshield Washer Systems as a component part, or indirectly purchased one or more Windshield Washer Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Windshield Washer Systems Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Windshield Washer Systems directly or for resale.

18

(t)      "Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Settlement Class" is defined as:

> All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Spark Plugs, Oxygen Sensors, or Air Fuel Ratio Sensors as a component part, or indirectly purchased one or more Spark Plugs, Oxygen Sensors, or Air Fuel Ratio Sensors as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Spark Plugs, Oxygen Sensors, and Air Fuel Ratio Sensors Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Spark Plugs, Oxygen Sensors, or Air Fuel Ratio Sensors directly or for resale.

(u)      "Ceramic Substrates Settlement Class" is defined as:

> All persons and entities who, from January 1, 1998, through the Execution Date, purchased or leased a new Vehicle in the United States not for resale that included one or more Ceramic Substrates as a component part, or indirectly purchased one or more Ceramic Substrates as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Ceramic Substrates Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Ceramic Substrates directly or for resale.

Settlement Agreement at ¶ 20.

"Vehicle" is defined in the Agreement to mean "any automobile, car, light truck, pickup truck, crossover, van, mini-van, sport utility vehicle, or similar motor vehicle."

**Settlement Amount**:  The DENSO Defendants have agreed to pay $193,800,000 by wiring such funds to one or more escrow accounts ("Escrow Account(s)") established at Wells Fargo Bank within thirty (30) days following the later of (a) the date the Court grants preliminary

19

approval of this proposed settlement or (b) the DENSO Defendants are provided with the account number, account name, and wiring information for the Escrow Account(s).  *Id.* ¶¶ at 34, 36.  After the Settlement Amount has been paid into the Escrow Account(s) at Wells Fargo Bank, EPPs shall allocate the Settlement Amount as follows:

- for the Automotive Wire Harness Systems Settlement Class, $14,531,801;

- for the Instrument Panel Clusters Settlement Class, $7,525,762;

- for the Fuel Senders Settlement Class, $187,823;

- for the Heater Control Panels Settlement Class, $14,676,679;

- for the Alternators Settlement Class, $50,449,261;

- for the Windshield Wiper Systems Settlement Class, $3,310,103;

- for the Radiators Settlement Class, $15,760,989;

- for the Starters Settlement Class, $9,709,228;

- for the Ignition Coils Settlement Class, $16,746,824;

- for the Motor Generators Settlement Class, $142,120;

- for the HID Ballasts Settlement Class, $1,424,803;

- for the Inverters Settlement Class, $142,120;

- for the Fan Motors Settlement Class, $142,120;

- for the Fuel Injection Systems Settlement Class, $19,392,650;

- for the Power Window Motors Settlement Class, $142,120;

- for the Automatic Transmission Fluid Warmers and Oil Coolers Settlement Class, $1,662,943;

- for the Valve Timing Control Devices Settlement Class, $4,362,039;

- for the Air Conditioning Systems Settlement Class, $21,836,133;

- for the Windshield Washer Systems Settlement Class, $362,978;

20

- for the Spark Plugs, Oxygen Sensors and Air Fuel Ratio Sensors Settlement Class, $9,760,366; and

- for the Ceramic Substrates Settlement Class, $1,531,138.

**Cooperation**: In addition to the ACPERA cooperation that they have already provided EPPs, the DENSO Defendants have agreed to provide extensive cooperation to the EPPs that will significantly aid in their prosecution of claims against the remaining Defendants. A general summary of the DENSO Defendants' cooperation obligations is provided below. The terms of this cooperation agreement are set forth in more detail in Section J (¶¶ 43-56) of the Settlement Agreement.  The DENSO Defendants' obligation to cooperate includes, among many other things, the duty to provide:

a. Transactional Data concerning the DENSO Defendants' bids for and sales of the Alleged Parts, to the extent that EPPs continue to pursue claims against one or more other Defendants with respect to the respective part at the time of production;

b. Additional Documents, if any, related to any Alleged Parts to the extent End-Payor Plaintiffs continue to pursue claims against one or more other Defendants with respect to the respective part at the time of production;

c. Subject to certain conditions, as set forth in the Settlement Agreement, a list of current or former officers, directors, or employees who were interviewed by any Government Entity, who testified before a grand jury in connection with the DOJ's investigation, or were disclosed to any Government Entity as having knowledge of alleged antitrust violations as to the Alleged Parts; and

d. Witness interviews, deposition testimony, declarations or affidavits, and trial testimony in any of the Actions related to any Alleged Parts to the extent End-Payor Plaintiffs continue to pursue claims against one or more other Defendants.

*Id.* at ¶¶ 44, 45, 48.

**Injunction**: The Settlement Agreement provides that the terms of the order and final judgment to be entered against the DENSO Defendants will include an injunction that prohibits

21

the DENSO Defendants, "for a period of two years beginning on the date of entry of the final order and judgment, from engaging in any price-fixing, bid-rigging, or market allocation as to any Automotive Part in violation of Section 1 of the Sherman Act." *Id.* at ¶ 29(g).

**Released Claims**: The Settlement Agreement releases only the DENSO Defendants (and their respective past and present parents, subsidiaries, affiliates, partners, insurers, and all other persons, partnerships or corporations with whom any of the foregoing have been, or are now, affiliated, and each of their respective past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, and insurers, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing) from all claims arising out of or relating in any way to any conduct alleged in the Complaints, the Proposed Consolidated Amended Complaint, or any act or omission of the DENSO Defendants, concerning any or all Released Parts. *See* Settlement Agreement ¶¶ 18, 19, 32.

The release does not include (1) any claims based on direct purchases of Released Parts; (2) any claims made in the MDL Proceeding with respect to an indirect purchase of a Released Part, for resale; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to Released Parts; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, warranty, securities, or similar claim relating to Released Parts; (5) claims concerning any product other than Released Parts; (6) claims under laws other than those of the United States relating to purchases of Released Parts made outside of the United States; and (7) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State relating to purchases or leases made by Releasors outside of an Indirect Purchaser State. *Id*. ¶ 32. The Settlement Agreement also

22

provides that the DENSO Defendants' sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracies. *Id.* ¶ 62.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel with the assistance of an experienced mediator—but also a thoughtfully conceived resolution of the proposed Settlement Classes' claims that maximizes their recovery. Indeed, the monetary component of the settlement with the DENSO Defendants is the largest, to date, in the Auto Parts Litigation. Moreover, the settlement with the DENSO Defendants effectively resolves EPPs' claims against all defendants in several cases[12] and guarantees cooperation by the DENSO Defendants in the continued prosecution of EPPs' claims in all of the other outstanding cases subject to this Agreement.

## I.   Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval.

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*,

---

[12] The settlement with the DENSO Defendants resolves all of EPPs' claims in the following actions: (1) *Fuel Senders*, Case No. 2:12-cv-00303; (2) *Motor Generators*, Case No. 2:13-cv-01503; and (3) *Inverters*, Case No. 2:13-cv-01803.

23

No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'") (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." Fed. R. Civ. P. 16 Advisory Committee's Note (1983) (citing 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (1971)); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting*, No. 07-10742, 2009 U.S. Dist. LEXIS 62365, at *4 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

24

to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 01-cv-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *35 (E.D. Mich. Aug. 2,

2010), (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing)).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

**A.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Indeed, in the Auto Parts Litigation, the Court recognized that

26

"EPPs face significant challenges" in litigating their claims.  *See*, *e.g.*, Opinion and Order Granting Final Approval of Class Action Settlement, 2:13-cv-01803, ECF No. 97.  Motions have already been vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.[13] Additionally, the DENSO Defendants would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See*, *e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, as the Court recognized in granting final approval of EPPs' settlements with nine separate defendants and their affiliates, given the stakes involved, an appeal is nearly certain

---

[13] Because Interim Co-Lead Class Counsel may have to litigate against the non-settling Defendants through trial and appeal, their duties to the Classes preclude a more detailed discussion of their potential litigation risks.  Instead, Interim Co-Lead Class Counsel here recite the arguments that have been and are expected to be raised by Defendants.

to follow regardless of the outcome at trial.  *See* Opinion and Order Granting Final Approval of

Class Action Settlement, Case No. 2:13-cv-01803, ECF No. 97. This creates additional risk, as

judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange,*

*Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class

action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d

1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered

for defendant). And even if class members were willing to assume all of the litigation risks, the

passage of time would introduce still more risks in terms of appeals and possible changes in the

law that would, in light of the time value of money, make future recoveries less valuable than

recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004)

("[I]t was inevitable that post-trial motions and appeals would not only further prolong the

litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305

F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed

Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the

proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class

represented by the Settlement outweigh the possibility of obtaining a better result at trial,

particularly when factoring in the additional expense and long delay inherent in prosecuting this

complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here

represents an excellent result for the members of the proposed Settlement Classes. The DENSO

Defendants' $193,800,000 payment provides for significant compensation to the proposed

Settlement Classes that will be available years earlier than would be the case if litigation against

the DENSO Defendants continued through trial and appeal.  And as discussed, *supra*, the

monetary component of the settlement is particularly valuable in light of the fact that DENSO would have likely sought the ACPERA benefits of single as opposed to treble damages and liability limited to their own sales as opposed to joint and several liability based on their sales and those of their co-conspirators if the case proceeded to trial and EPPs were to obtain a judgment against DENSO. Settlements of this type, before discovery has been completed, create value beyond their direct pecuniary benefit to the class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *50-51 (noting "significant value" of icebreaker settlement); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 U.S. Dist. LEXIS 9687, at *49 (S.D. Tex. June 4, 1981) ("*Corrugated Container*").

In addition, the settlement with the DENSO Defendants fully resolves EPPs' claims in a handful of actions. Specifically, the settlement with the DENSO Defendants resolves EPPs' claims in the *Fuel Senders*, 2:12-cv-00303, *Motor Generators*, 2:13-cv-01503, and *Inverters*, 2:13-cv-01803, actions, allowing EPPs and Interim Co-Lead Class Counsel to focus their litigation efforts on a smaller number of pending cases.

Of particular importance is the fact that, in addition to the cooperation already provided by DENSO, the Settlement Agreement requires the DENSO Defendants to provide substantial ongoing discovery cooperation, subject to certain limitations, to Interim Co-Lead Class Counsel in the remaining cases by providing transactional data, interviews, documents, depositions, and trial testimony, among other cooperation. *See* Settlement Agreement § J (¶¶ 43-56). This cooperation agreement is extremely valuable to the classes. The DENSO Defendants' cooperation in the remaining cases will afford EPPs access to transactional data, documents, and witnesses without protracted and expensive discovery—a significant class-wide benefit. *See,*

29

*e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 U.S. Dist. LEXIS 9687, at *49; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The Settlement Agreement also specifically provides that it does not alter the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by these Defendants.  *See* Settlement Agreement ¶ 62.  In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement. 1981 U.S. Dist. LEXIS 9687, at *49; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability).  Here too, the EPPs will be able to pursue their full damages, with no diminution other than deduction of the actual DENSO settlement amount.

### B.  The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel With the Assistance of a Mediator.

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel with the assistance of an internationally-

renowned mediator. Newberg § 11.41. The judgment of Interim Co-Lead Class Counsel that the settlement is in the best interest of the proposed Settlement Classes "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, No. 09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The Settlement Agreement, in its initial form, was negotiated for months by Interim Co-Lead Class Counsel in a process that involved multiple discussions with counsel for the DENSO Defendants, including in-person meetings. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists before negotiating this deal.

Interim Co-Lead Class Counsel for the EPPs was well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have

31

adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, No. 09-cv-440, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

## II.     The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

32

While the Supreme Court reiterated that, particularly in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context the requisite "rigorous analysis" of the record and consideration of the merits must be focused on and limited to the question whether Rule 23's requirements have been established. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.   The Proposed Settlement Classes Meet the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by the Courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations

33

omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, No. 05-cv-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i. The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Classes consist of all persons and entities who, from January 1, 1998, through the Execution Date of the Settlement Agreement between the DENSO Defendants and the EPPs, purchased or leased a new Vehicle in the United States not for resale which included one or more of the Alleged Parts as a component part or indirectly purchased one or more of the Alleged Parts as a replacement part. It is beyond dispute that millions of persons and entities throughout the United States have purchased or leased new Vehicles not for resale containing the Alleged Parts. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impractical – if not impossible.

34

ii.     **End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions.**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 444 (E.D. Mich. 2015) (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also* Newberg § 3.10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Here, EPPs have identified the following issues common to the proposed Settlement Classes:

- Whether Defendants engaged in combinations and conspiracies among themselves to fix, raise, maintain, or stabilize the prices of the Alleged Parts sold in the United States;

- Whether Defendants engaged in combinations and conspiracies among themselves to rig bids quoted to customers of the Alleged Parts sold in the United States;

- Whether Defendants engaged in combinations and conspiracies to allocate customers and the markets for the Alleged Parts sold in the United States;

- The duration of the illegal conspiracy or conspiracies;

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of the Alleged Parts; and

- Whether unlawful overcharges on the price of the Alleged Parts were passed through to the indirect purchasers of the Alleged Parts.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii.  End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 (S.D. Ohio 2007) (citing *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002)); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013

36

U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiffs and the members of the proposed Settlement Classes believe they are all victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for the Alleged Parts and seek essentially the same relief, Rule 23(a)(3) is satisfied. *See Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 537 (E.D. Mich. 2013), *vacated*,  No. 13-0113, 2014 U.S. App. LEXIS 4447 (6th Cir. Jan. 6, 2014), *reinstated in full*, No. 06-15601, 2014 U.S. Dist. LEXIS 29447 (E.D. Mich. Mar. 7, 2014) (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

### iv.    Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes.

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the

proposed Settlement Classes because EPPs and members of the proposed Settlement Classes that: (i) purchased or leased new Vehicles not for resale in the United States containing the relevant parts; and/or (ii) indirectly purchased the relevant parts, have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). EPPs and the members of the proposed Settlement Classes also share a common interest in obtaining the DENSO Defendants' substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Classes are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in this action and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. For the same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

38

### B.      The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.      Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Avio*, 311 F.R.D. at 440 (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th

Cir.1988)); *see also Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Classes under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013).

Because the EPPs allege conduct from which all proposed Settlement Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members—for example, the existence and scope of the alleged price-fixing conspiracy or conspiracies among Defendants and the market impact of Defendants' conspiracy or conspiracies—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions . . . .") (quoting Newberg § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[14] Furthermore, here the

---

[14] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Fin. Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 U.S. Dist. LEXIS 141909, at *104 (E.D. Pa. Oct. 19, 2015);

evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual members of the Settlement Classes. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones; *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Classes predominate in these cases—all EPPs allegedly paid overcharges that were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Classes.

### ii.    A Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation

---

*Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action.  *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 09-cv-1608, 2010 U.S. Dist. LEXIS 58912, at *11 (N.D. Ohio June 15, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of Settlement Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Untold numbers of Settlement Class members purchased or leased new Vehicles not for resale in the United States containing one or more of the Alleged Parts as a component part or indirectly purchased one or more of the Alleged Parts as a replacement part for a Vehicle during the settlement class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[15]

---

[15] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

42

### C.      The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(2).

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ."  Claims for non-monetary relief, like those asserted under the federal antitrust laws by indirect purchasers in antitrust actions, are properly certified under Rule 23(b)(2).

### III.    Notice to the Settlement Class Members.

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice."  *Thacker*, 259 F.R.D. at 271-72.  To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties."  *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and of this Agreement to all members of the Settlement Classes identified by End-Payor Plaintiffs (the "Notice Motion")." Settlement

43

Agreement ¶ 28. The Notice Motion shall include "a proposed form of, method for, and date of dissemination of notice in each Action." *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice of this settlement and additional settlements at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against the DENSO Defendants in accordance with the terms of the Settlement Agreement; and

4. Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel on behalf of the Settlement Classes.

Date: July 14, 2016

Respectfully submitted,

*/s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS KAPLAN LLP**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Hsalzman@RobinsKaplan.com
Bpersky@RobinsKaplan.com
Wreiss@RobinsKaplan.com

*/s/ Steven N. Williams*
Steven N. Williams
Demetrius X. Lambrinos
Elizabeth Tran
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center

44

840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
swilliams@cpmlegal.com
dlambrinos@cpmlegal.com
etran@cpmlegal.com

*/s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
1000 Louisiana St., Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

*/s/ E. Powell Miller*
E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

45

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2016 I caused the foregoing END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DENSO DEFENDANTS AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller